Lee Holen (Alaska Bar No. 7810071)
**Lee Holen Law Office**
113 W. Northern Lights Blvd., Suite 218
Anchorage, AK 99503
Telephone: (907) 278-0298
Facsimile: (907) 278-0247
Email: leeholen@alaska.net

Shanon J. Carson (PA 85957)*
Sarah R. Schalman-Bergen (PA 206211)*
Alexandra L. Koropey (PA 315240)*
**Berger & Montague, P.C.**
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604
Email: scarson@bm.net
Email: sschalman-bergen@bm.net
Email: akoropey@bm.net
*Admitted *pro hac vice.*

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **MICHAEL CIAMILLO and ARTHUR DENHAM, individually and on behalf of all others similarly situated,**<br><br>      **Plaintiffs,**<br><br>  **v.**<br><br>**BAKER HUGHES INCORPORATED,**<br><br>      **Defendant.** | **Civil Action No. 3:14-cv-00081-RRB**<br><br>**Chief Judge Beistline**<br><br>**Electronically Filed** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL HISTORY.................................................................................. 3

III.  THE TERMS OF THE SETTLEMENT AGREEMENT ................................... 5

      A.    The Settlement Class................................................................................. 5

      B.    Distribution Of The Gross Settlement Amount And Release of Claims ............... 5

      C.    Notice To Potential Settlement Class Members ..................................... 9

IV.   DISCUSSION ................................................................................................... 11

      A.    Standard of Review on Motion for Preliminary Approval ................................. 11

      B.    The Settlement Meets the Standard for Preliminary Approval............................ 12

            1.    The Settlement Agreement Is The Product Of Informed, Non-Collusive Negotiation And Does Not Present Any Grounds To Question Its Fairness ................................................................................................ 12

            2.    There Are No Obvious Deficiencies With The Settlement Agreement.... 13

            3.    The Settlement Does Not Improperly Grant Preferential Treatment To Class Representatives Or Segments Of The Class................................... 15

            4.    The Settlement Amount Falls Well Within The Range Of Possible Approval ................................................................................................ 18

      C.    Certification of the State Law Class Is Appropriate ........................................... 19

            1.    The State Law Class Is Sufficiently Numerous ....................................... 20

            2.    The State Law Class Seeks Resolution of Common Questions................ 20

            3.    The Claims Of The Named Plaintiffs Are Typical Of The State Law Class ................................................................................................ 21

            4.    Class Counsel And Plaintiffs Ciamillo and Denham Meet The Adequacy Requirements ......................................................................................... 21

i

5.      The State Law Class Satisfies The Predominance And Superiority
        Requirements of Rule 23(b)(3) ................................................................... 22

D.      The Settlement Class Should Be Conditionally Certified Pursuant To 29 U.S.C. §
        216(b) ................................................................................................................ 22

E.      The Proposed Notice Provides Adequate Notice To The Settlement Class And
        Satisfies Due Process ........................................................................................ 23

F.      The Proposed Implementation Schedule ............................................................ 24

V.      CONCLUSION ................................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alberto v. GMRI, Inc.*,
    252 F.R.D. 652 (E.D. Cal. 2008) ................................................................12, 16

*Alexander Mfg., Inc. v. Ill. Union Ins. Co.*,
    666 F. Supp. 2d 1185 (D. Or. 2009) ...............................................................12

*Barbosa v. Cargill Meat Solutions Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013) ....................................................................19

*Bredbenner v. Liberty Travel, Inc.*,
    No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ...............................17

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ..........................................................................24

*Fry v. Hayt, Hayt & Landau*,
    198 F.R.D. 461 (E.D. Pa. 2000) ..........................................................19, 20, 21

*Gen. Tel. Co. of S.W. v. Falcon*,
    457 U.S. 147 (1982) ........................................................................................21

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...........................................................11, 20, 24

*Harris v. Vector Mktg. Corp.*,
    716 F. Supp. 2d 835 (N.D. Cal. 2010) ...........................................................23

*In re Charles Schwab Corp. Secs. Litig.*,
    No. 08-01510, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ...........................11

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
    No. 06-cv-3202, 2009 WL 2137224 (E.D. Pa. Jul. 16, 2009) ...........................17

*In re Mego Fin. Corp. Secs. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .....................................................................13, 17

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..............................................12, 13, 18

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989) *aff'd sub nom. Class Plaintiffs v. City of
    Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...........................................................13

*Leuthold v. Destination Am., Inc.*,
224 F.R.D. 462 (N.D. Cal. 2004) .........................................................................23

*McCoy v. N. Slope Borough*,
No. 3:13-CV-00064, 2013 WL 4510780 (D. Alaska Aug. 26, 2013) (Gleason, J.) ..............................................................................................................................22

*Mendoza v. United States*,
623 F.2d 1338 (9th Cir. 1980) ............................................................................24

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) .............................................................................................24

*Nen Thio v. Genji, LLC*,
14 F. Supp. 3d 1324, 1340 (N.D. Cal. 2014) ......................................................23

*Officers for Justice v. Civil Serv. Com'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ..........................................................................11, 13

*Ontiveros v. Zamora*,
No. 2:08-cv-567, 2014 WL 3057506 (E.D. Cal. July 7, 2014) .............................19

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...........................................................................16, 18

*Sandoval v. Tharaldson Empl. Mgmt., Inc.*,
No. 08-cv-482, 2010 WL 2486346 ......................................................................17

*Satchell v. Fed. Express Corp.*,
No. 03-cv-4659, 2007 WL 1114010 (N.D. Cal. 2007) .........................................12

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
157 F. Supp. 2d 561 (E.D. Pa. 2001) ...................................................................12

*Stanton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ...............................................................................16

*Thiessen v. Gen. Elec. Cap. Corp.*,
267 F.3d 1095 (10th Cir. 2001) ...........................................................................23

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ...............................................................................19

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................16

*Vasquez v. Coast Valley Roofing, Inc.*,
670 F. Supp. 2d 1114 (E.D. Cal. 2009) ............................................................18, 19

*Wren v. RGIS Inventory Specialists,*
    No. 06-cv-0577, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .................................................16

**STATUTES AND OTHER AUTHORITIES**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") .............................................. *passim*

FED. R. CIV. P. 23 .................................................................................................................... *passim*

California Labor Code Private Attorneys General Act of 2004 ...........................................6, 8, 15

MANUAL FOR COMPLEX LITIGATION .......................................................................................11, 24

## I.    INTRODUCTION

This class and collective action wage and hour lawsuit filed by Plaintiffs Michael Ciamillo and Arthur Denham ("Plaintiffs") against Defendant Baker Hughes Incorporated ("Defendant" or "Baker Hughes") (collectively, the "Parties") has been settled, and Plaintiffs respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement.    As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's preliminary approval.

On April 28, 2014, Plaintiff Ciamillo commenced this lawsuit (the "Action"), which alleges that Defendant had a policy and practice of failing to pay its Field Supervisor employees overtime pay when they worked more than forty (40) hours in a workweek, in violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  (Dkt. No. 1.)  On May 28, 2014, Defendant filed a Motion to Dismiss Or, In the Alternative, Motion for More Definite Statement ("Motion to Dismiss").  (Dkt. No. 22.)  Plaintiff filed an Opposition to Defendant's Motion to Dismiss on June 23, 2014.  (Dkt. No. 34.)  Subsequently, the Parties met and conferred and agreed to engage in an alternative dispute resolution ("ADR") process.  (Dkt. No. 37.)

In accordance with their agreed ADR process, the Parties engaged in intensive fact discovery, an in-person mediation session before an experienced mediator, William H. Lemons, Esq., and extensive follow-up arm's length settlement negotiations.  The Parties have now reached a settlement. *See* Declaration of Shanon Carson ("Carson Decl.") ¶¶ 9, 11.  The terms of the settlement are set forth in detail in a Settlement Agreement (the "Settlement Agreement" or "Agreement"), which is attached to the Motion as Exhibit 1.   Additionally, as a result of information gathered and analyzed during the ADR process and pursuant to the terms of the Settlement Agreement, on January 30, 2015, Plaintiffs filed a First Amended Class and

Collective Action Complaint ("Amended Complaint"), alleging violations of applicable states' laws based on Defendant's identical pay practices applicable to Field Supervisor employees who worked in those states (the "State Law Class").  (Dkt. No. 52.)

The Settlement includes a gross payment of Five Million, Three Thousand, Seven Hundred and Fifty Dollars ($5,003,750.00) (the "Gross Settlement Amount"), excluding the employer's share of applicable Federal Insurance Contributions Act ("FICA") and Federal Unemployment Tax Act ("FUTA") payroll taxes and interest accrued thereon, which shall be paid by Baker Hughes in addition to the Gross Settlement Amount.  The Gross Settlement Amount is a non-reversionary common fund.  Restated, none of the funds from the Gross Settlement Amount will revert to Defendant.  In exchange, Plaintiffs and all individuals who were employed by Defendant as Field Supervisors between July 1, 2011 and January 5, 2014 (the "Class Period"),[1] who received compensation pursuant to a salary plus day rate and received at least one field service payment under the "Field Service Pay" paycode ("Settlement Class" or "Settlement Class Members") will dismiss any and all wage-related claims that emanate from and are based upon the same facts or allegations set forth in the Amended Complaint.  *See* Ex. 1, ¶¶ 11(a); (b); (f); (u); (y); (aa); 12.  However, no Settlement Class Member shall be deemed to release claims under the FLSA unless he/she returns a timely Claim Form.  *Id.* ¶ 11(u).  There are three hundred and sixty-five (365) members of the Settlement Class, including Plaintiffs Ciamillo and Denham.  Carson Decl. ¶ 8.

Plaintiffs' counsel, Berger & Montague, P.C. ("Berger & Montague") and Hardin & Hughes, LLP ("Hardin & Hughes") (together, "Class Counsel"), believe that the Settlement

---

[1] Defendant began changing its pay practices applicable to Field Supervisors in 2012 and the final changes became effective January 5, 2014, so that date marks the end of the Class Period. The Settlement Agreement does not release any claims of Settlement Class Members for conduct occurring after January 5, 2014.

Agreement provides an excellent settlement for Plaintiffs and the Settlement Class, with respect to their claims for allegedly unpaid wages and overtime arising from Defendant's alleged improper wage and hour practices at issue in this case. Carson Decl. ¶ 12.

This motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for preliminary approval under federal law and falls well within the range of reasonableness. Accordingly, Plaintiffs request that the Court issue an order: 1) granting preliminary approval of the proposed Settlement Agreement; 2) provisionally certifying the Settlement Class pursuant to 29 U.S.C. § 216(b); 3) provisionally certifying the State Law Class pursuant to FED. R. CIV. P. 23; 4) preliminarily appointing Plaintiffs Ciamillo and Denham as representatives of the Settlement Class and State Law Class; 5) preliminarily appointing Berger & Montague and Hardin & Hughes as Class Counsel for the Settlement Class and State Law Class; 6) approving Angeion Group, LLC as Settlement Administrator and preliminarily approving the costs of administration; 7) approving the plan of notice to the Settlement Class Members, including approving the proposed Notice and Claim Form attached to the Settlement Agreement as Exhibits A and B; and 8) approving the proposed schedule and procedure for the final approval of this Settlement. Plaintiffs have met and conferred with Defendant who does not oppose this Motion.

## II.   **PROCEDURAL HISTORY**

On April 28, 2014, Plaintiff Ciamillo commenced this Action, alleging that Defendant had a policy and practice of failing to pay its Field Supervisor employees overtime pay when they worked more than forty hours in a workweek, in violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"). (Dkt. No. 1.) Defendant filed a Motion to Dismiss Or, In the Alternative, Motion for More Definite Statement ("Motion to Dismiss") on May 28, 2014. (Dkt. No. 22.) Plaintiff filed an Opposition to Defendant's Motion to Dismiss on

3

June 23, 32014.  (Dkt. No. 34.)  Subsequently, the Parties met and conferred and agreed to engage in an ADR process.  (Dkt. No. 37.)

On January 30, 2015, Plaintiffs Ciamillo and Denham filed a First Amended Class and Collective Action Complaint ("Amended Complaint"), alleging violations of applicable states' laws based on Defendant's identical pay practices applicable to Field Supervisor employees who worked in those states.  (Dkt. No. 52.)  Plaintiffs, individually and on behalf of all persons similarly situated, assert claims against Defendant in the form of: (1) failure to pay overtime wages under the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and (2) failure to pay overtime wages under the applicable states' laws.

On November 4, 2014, the Parties participated in mediation in Houston, Texas before an experienced mediator, William H. Lemons, Esq.  Carson Decl. ¶ 9.  In connection with this mediation and the Parties' agreed ADR process, Defendant provided Class Counsel with voluminous electronic payroll records, job descriptions, and applicable employment policies, which Class Counsel reviewed and analyzed.  *Id.* ¶ 10.

As a result of that mediation session and subsequent arm's length negotiations that occurred between the Parties, the Parties have agreed to settle this Action according to the terms of the Settlement Agreement.  *Id.* ¶ 11.  Accordingly, the Parties now present the Settlement Agreement to the Court for its approval.  The Settlement offers significant advantages over the continued prosecution of this case.  Specifically, Plaintiffs and the Settlement Class Members will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendant would assert various defenses to its liability.  *Id.* ¶¶ 12-13.  The Parties have spent considerable time negotiating and drafting the Settlement

Agreement, which ensures that the Settlement Class Members are provided with notice of the Settlement Agreement and its terms.  *Id.* ¶ 14.

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

### A.    The Settlement Class

Under the Settlement Agreement, the Settlement Class includes "all individuals who were employed by Baker Hughes as Field Supervisors, and received compensation pursuant to a salary plus day rate during the Class Period, and received at least one field service payment under the 'Field Service Pay' paycode."  Ex.1 at ¶ 11(y).  The applicable time period for the Settlement Class is July 1, 2011 through January 5, 2014 (the "Class Period").  *Id.* ¶ 11(f).

The Parties have agreed that, for settlement purposes only, the Settlement Class may be certified as an FLSA collective action pursuant to 29 U.S.C. § 216(b) and as a class action pursuant to FED. R. CIV. P. 23.  *Id.* ¶ 9.  Notice of the settlement will be provided to the above-defined Settlement Class in the form of the proposed Notice attached to the Settlement Agreement as Exhibit A.  *Id.* ¶¶ 11(z); 14(b)-(f).  Claim Forms, as attached to the Settlement Agreement as Exhibit B, will also be sent to the Settlement Class Members.  *Id.* ¶ 11(d).  All Settlement Class Members (except those that opt out) are eligible to receive a Settlement Award. *Id.* ¶ 21.

### B.    Distribution Of The Gross Settlement Amount And Release of Claims

Under the Settlement Agreement, within five (5) business days after the Effective Date,[2] Defendant will wire the Gross Settlement Amount to the Settlement Administrator.  *Id.* ¶ 19(a). Upon receipt by the Settlement Administrator, these funds shall be transferred immediately into a

---

[2] The term "Effective Date" means "the first business day after the Court's final approval of the Settlement is finally affirmed on appeal and/or is no longer subject to appeal or certiorari, and the time for any petition for reargument, appeal, or review, by certiorari or otherwise, has expired (*i.e.*, thirty days from Final Approval)."  *Id.* ¶ 11(k).

Qualified Settlement Fund. *Id.* The Qualified Settlement Fund will be administered by a Court-appointed Settlement Administrator, Angeion Group, LLC ("Angeion"), an independent and highly experienced third-party claims administration company. *Id.* ¶¶ 11(w); 19(a)-(b).

The Gross Settlement Amount includes amounts to cover: (1) up to Twenty Thousand Dollars ($20,000.00) as service awards to be shared by Named Plaintiffs Ciamillo and Denham, for their efforts in bringing and prosecuting this matter; (2) the payment of attorneys' fees in the amount of up to one-third of the Gross Settlement Amount ($1,666,248.75), which will compensate Class Counsel for all work performed in the litigation as of the date of the Settlement Agreement plus all work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Action, plus the payment of out-of-pocket costs incurred by Class Counsel, which currently are $19,177.16; (3) a maximum of Twenty-Five Thousand Dollars ($25,000.00) for the Settlement Administrator's costs of the settlement administration; and (4) payment to the California Labor Workforce and Development Agency pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA") in the amount of $3,750.00. *Id.* ¶¶ 11(o), (p); 19(a)-(c). Class Counsel will file a separate Motion for Approval of Attorneys' Fees and Costs prior to the Court's final fairness hearing, as described in the proposed Implementation Schedule, *see infra* Section F.

Pursuant to the Settlement Agreement, if the Court approves the amounts set forth above, the Net Settlement Amount would be approximately $3,269,574.09. *Id.* ¶ 11(p). Awards to

Eligible Class Members[3] will be made from the Net Settlement Amount. Each Eligible Class Member shall be treated the same for the purpose of calculating individual Settlement Awards. *Id.* ¶¶ 11(j); 21.

All Eligible Class Members shall be paid a Settlement Award based on their *pro rata* share of the Net Settlement Amount. *Id* ¶ 21. The Settlement Administrator will calculate each Eligible Class Member's *pro rata* share of the Net Settlement Amount by dividing (a) the total compensation that the respective Eligible Class Member received as a Field Supervisor during the Class Period on a salary and day-rate basis, by (b) the total compensation paid to the Settlement Class on a salary and day-rate basis during the Class Period. *Id.* The resulting figure will then be multiplied by the Net Settlement Amount, which will equal the Eligible Class Member's Settlement Award unless the Settlement Class Member did not timely file a Claim and Opt-In Consent Form, in which case the Settlement Award will be reduced by ten percent (10%). The amount of the 10% reduction will be divided equally among all Eligible Class Members who timely filed a Claim and Opt-In Consent Form. Each Eligible Class Member shall receive a minimum amount of $250. *Id.* All Settlement Award determinations shall be based on Defendant's payroll information for Settlement Class Members which shall be produced to Class Counsel and the Settlement Administrator. *Id.*

Fifty percent (50%) of each Settlement Award will be treated as back wages subject to W-2 reporting and normal payroll taxes and withholding will be deducted by the Settlement Administrator pursuant to state and federal law on these amounts. *Id.* ¶ 22. The withholding will be at the twenty-five percent (25%) supplemental wage tax rate. *Id.* The remaining fifty percent (50%) of each Settlement Award will be treated by all parties as non-wage penalties and

---

[3] The term "Eligible Class Member" means all Settlement Class Members who do not timely opt out of the Settlement Class. *Id.* ¶ 11(j).

liquidated damages, and will be reported on an IRS Form 1099 and will not be subject to FICA and FUTA withholding taxes.  *Id.*

Settlement Awards will be mailed to all Eligible Class Members within thirty (30) days following the Effective Date or as soon as reasonably practicable.  *Id.* ¶ 24.  All checks for Settlement Awards shall remain valid and negotiable for one hundred eighty (180) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect.  *Id.* ¶ 25.  If, at the conclusion of the 180 day check void period, there are any monies from uncashed checks, the funds will revert to the Qualified Settlement Fund.  *Id.* Any funds remaining in the Qualified Settlement Fund will be paid to a *cy pres* recipient to be agreed upon by the Parties, subject to the Court's approval in the Final Approval Order.  *Id.* ¶ 26. There will be no reversion of any portion of the Gross Settlement Amount to Defendant at any time.  *Id.* ¶ 19(a).

In exchange for the Settlement benefits, each Settlement Class Member who is sent the Notice and Claim Form and who does not timely opt out of the Settlement, will release Defendant from "any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees[4] for alleged unpaid overtime wages, underpayment of wages, nonpayment of wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties and any penalties under state private attorney general laws, such as the California Labor Code Private Attorneys General Act of 2004), premium pay, interest, attorneys' fees, litigation costs, restitution or other

---

[4] "Releasees" means Defendant and its past, present and future parent companies, subsidiaries, affiliates, divisions, agents, employees, owners, members, officers, directors, partners, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers.  *Id.* ¶ 11(v).

compensation and relief arising under the FLSA or any other state wage-related law applicable to the allegations asserted in the Action and which emanate from and are based upon the same facts alleged in the Action on behalf of Plaintiffs and the Settlement Class with respect to the time that they were employed by Defendant as Field Supervisors during the Class Period." *Id.* ¶ 11(u) (defining "Released Claims"). However, only Settlement Class members who return a Claim Form and thereby become opt-in plaintiffs shall release their FLSA claims against Releasees. *Id.* ¶ 11(u). In addition, in exchange for the amounts approved by the Court as service awards, Named Plaintiffs Ciamillo and Denham have agreed to a broader general release of claims than the other Opt-In Plaintiffs. *Id.* ¶ 12(a) (describing the release by Named Plaintiffs Ciamillo and Denham); ¶ 20(a).

C.    **Notice To Potential Settlement Class Members**

The Settlement Agreement provides what Plaintiffs believe is the fairest and most practicable procedure for notifying Settlement Class Members of the terms of the Settlement Agreement and their respective rights and obligations under the Agreement – direct mail. Under the terms of the Settlement Agreement, within ten (10) business days after the Court's Preliminary Approval Order, Defendant will provide the Settlement Administrator with an electronic database containing the names, last known addresses, last known telephone numbers, last known email addresses, social security numbers, first date of employment as a Field Supervisor, last date of employment as a Field Supervisor, and hire date, termination date (unless still a current employee) and the amount of compensation that each Settlement Class Member received while working as a Field Supervisor on a salary plus day-rate basis during the Class Period. *Id.* ¶ 14(c).

In order to provide the best notice practicable, the Settlement Administrator will run the list of Settlement Class Members through the U.S. Postal Service's National Change of Address

database ("NCOA") before mailing the Settlement Notice and Claim Form. *Id.* ¶ 14(d). Additionally, Defendant may communicate with its current employees who are Settlement Class Members for the purpose of encouraging them to participate in the Settlement, so long as such communications are consistent with this Settlement Agreement. *Id.* ¶ 14(g).

Within ten (10) business days after receiving the list of Settlement Class Members, the Settlement Administrator shall send copies of the Court-approved Settlement Notice and Claim Form to all Settlement Class Members via U.S. first class mail, with an enclosed self-addressed postage prepaid return envelope. *Id.* ¶ 14(e). Any Notices returned to the Settlement Administrator with a forwarding address shall be re-mailed by the Settlement Administrator within three (3) business days following receipt of the returned mail. If any Notice is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts such as skip traces to search for the correct address, and shall promptly re-mail the Settlement Notices to any newly found addresses. *Id.* ¶ 14(f).

Settlement Class Members shall have sixty (60) days from the time the Claim Form is initially mailed by the Settlement Administrator to submit an executed Claim Form, object to or opt-out of the Settlement ("Notice Deadline"). *Id.* ¶ 11(q). Settlement Class Members who wish to object to the Settlement may do so by submitting a written statement objecting to Class Counsel and counsel for Defendant on or before the Notice Deadline. *Id.* ¶ 15. Additionally, Settlement Class Members who wish to exclude themselves from the Settlement ("opt out") must mail to the Settlement Administrator a written statement indicating that they do not wish to participate, or be bound by the Settlement. *Id.* ¶ 16.

## IV.    DISCUSSION

Plaintiffs respectfully request that the Court enter the accompanying proposed order preliminarily approving the Settlement Agreement.  Defendant does not oppose this Motion.

### A.    Standard of Review on Motion for Preliminary Approval

Pursuant to the FLSA and FED. R. CIV. P. 23(e), the Court's approval is required for the Settlement Agreement.  *In re Charles Schwab Corp. Secs. Litig.*, No. 08-01510, 2011 WL 1481424, at *4 (N.D. Cal. Apr. 19, 2011).  This involves a "two-step process."  MANUAL FOR COMPLEX LITIGATION § 30.41, at 236 (3d ed. 1995).  First, Class Counsel submits the proposed terms of the Settlement to the Court, and the Court makes a preliminary fairness evaluation.  *Id.*  Second, following preliminary approval, Settlement Class Members are provided notice of the Settlement and of the Final Approval Hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the Settlement.  *Id.*

The Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a settlement requires this Court to balance several factors:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Com'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) (discussing same).  In conducting this evaluation, it is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms.  *See Officers for Justice*, 688 F.2d at 625.  Many of the "fairness" factors cannot be fully assessed until the court conducts the final approval hearing; therefore, "a full fairness analysis is

unnecessary at [the preliminary approval] stage." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotations and citation omitted).

The primary concern of judicial supervision at the preliminary approval stage of the settlement process is to ensure that "(1) the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls with the range of possible approval." *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.,* 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).

### B.    The Settlement Meets the Standard for Preliminary Approval

This Settlement satisfies the requirements for preliminary approval, and the Court should authorize the sending of the Class Notice and Claim Form to the Settlement Class Members.

### 1.    The Settlement Agreement Is The Product Of Informed, Non-Collusive Negotiation And Does Not Present Any Grounds To Question Its Fairness

It is well-established that, in determining whether a proposed settlement should be preliminarily approved, courts may consider whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations." *Schwartz,* 157 F. Supp. 2d at 570 n.12 (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) §30.44). "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. 03-cv-4659, 2007 WL 1114010, at *4 (N.D. Cal. 2007); *see also Alexander Mfg., Inc. v. Ill. Union Ins. Co.*, 666 F. Supp. 2d 1185, 1202 (D. Or. 2009) (presuming settlement was reasonable where "the settlement appear[ed] to be the product of arms-length negotiation conducted in good faith" with the assistance of a private mediator). Counsels' opinions regarding the Settlement also "warrant great weight both because of their

considerable familiarity with th[e] litigation and because of their extensive experience in similar actions." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) (citing *Officers for Justice,* 688 F.2d at 625).

In this case, the proposed Settlement was reached after an in-person all-day mediation overseen by an experienced mediator, William H. Lemons, Esq., followed by extensive arm's length negotiations between counsel for the Parties with the continued assistance of Mr. Lemons. Class Counsel extensively investigated the applicable law as applied to the relevant facts discovered in this Action, and the potential defenses thereto. This included numerous interviews with Class Members and the exchange of key documents and analysis with Defendant. The settlement amount is based on an extensive review of the facts and law. Additionally, Class Counsel are experienced and respected class action litigators. *See* Carson Decl. ¶¶ 2-4; 9-10; Ex. A. Based on Class Counsel's knowledge and expertise in this area of law, Class Counsel believe this Settlement will provide a substantial benefit to the Settlement Class. *Id.* ¶¶ 12-13. In summary, the proposed Settlement Agreement is the product of careful factual and legal research and arm's length negotiations between the Parties, and does not present any grounds to question its fairness.

### 2.    There Are No Obvious Deficiencies With The Settlement Agreement

The proposed Settlement is fair, reasonable and adequate, and it is void of any obvious deficiencies. To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080. The fairness and the adequacy of the settlement should be assessed relative to the risks of pursuing the litigation to judgment. *In re Mego Fin. Corp. Secs. Litig.,* 213 F.3d 454,

459 (9th Cir. 2000) (noting that whether the settlement is fair and adequate depends on the "the difficulties in proving the case").

The Gross Settlement Amount is based on an analysis of each workweek that each Class Member worked for Defendant during the relevant time period, as well as the Class Members overall compensation during the Class Period, as determined by Defendant's personnel and payroll records. *See* Carson Decl. ¶ 15. More specifically, the Net Settlement Amount of approximately $3,269,574.09 provides Settlement Class Members with the recovery of a substantial percentage of their unpaid overtime hours worked, and was carefully negotiated based on factual discovery, a substantial investigation by Class Counsel, and the review and analysis of documents produced by Defendant in preparation for mediation. *Id.* ¶ 16.

This is an excellent result for the Class considering the risks of continued litigation and maintaining this case as a class and collective action. In comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time and expense to yield any potential benefit to the Class. In reaching this conclusion, Class Counsel evaluated the Settlement by weighing the damages available to the Settlement Class Members against the relevant risk factors, which include, among other things, the possibility that class certification of the Settlement Class would be denied during litigation, the possibility that Defendant could have prevailed on the merits by establishing that the Settlement Class Members were properly classified as exempt employees, and the possibility that Plaintiffs might not prevail on some of their claims, including whether Defendant's actions were willful under the FLSA. *Id.* ¶ 13.

Accordingly, the Gross Settlement Amount of $5,003,750.00 represents a substantial portion of Defendant's maximum exposure, discounted by the risk and expense of further litigation and the interest of providing Class Members with a guaranteed recovery, quickly. The

complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

### 3. The Settlement Does Not Improperly Grant Preferential Treatment To Class Representatives Or Segments Of The Class

Under the terms of the Settlement, there are no segments of the Class that will receive unduly preferential treatment. All Settlement Class members are subject to the same notice and claims procedures and eventual release of claims. The Settlement Agreement allocates approximately $3,269,574.09 for distribution to Eligible Class Members (not including attorneys' fees/costs, costs of the claims administrator and notice, service awards, employer's share of FICA and FUTA, or payment to PAGA).

Members of the Settlement Class will automatically be eligible to receive a *pro rata* portion of the Net Settlement Amount based on their work as a Field Supervisor during the Class Period. Payments will be distributed to all Settlement Class Members who do not timely opt out of the settlement ("Eligible Class Member"). Ex. 1, ¶¶ 11(j); 21. If an Eligible Class Member does not timely return a Claim and Opt-In Consent Form, the Eligible Class Member's Settlement Award will be reduced by ten percent (10%). *Id.* ¶ 21. The amount of the ten percent (10%) reduction will be divided equally among the Eligible Class Members who timely return a Claim and Opt-In Consent Form. *Id.* Every Eligible Class Member will receive a minimum payment of $250. *Id.* The estimated average recovery is approximately $8,957.74 per Settlement Class Member. *See* Carson Decl. ¶ 16.

Additionally, pursuant to the Settlement Agreement, Defendant has agreed to pay Named Plaintiffs Ciamillo and Denham modest service awards in the amount of $10,000 each for their efforts in bringing and prosecuting this matter, and in addition, for their broader general release of most waivable claims against Defendant arising out of their employment. Ex. 1, ¶¶ 11(p);

12(a); 20(a).  This amount will be paid in addition to their recovery of unpaid overtime for the time when they worked as a Field Supervisor for Defendant.  This award is limited and well within the range of such awards commonly provided in litigation of this nature.

"Service awards, also known as incentive payments, to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable."  *Wren v. RGIS Inventory Specialists*, No. 06-cv-0577, 2011 WL 1230826, at *12 (N.D. Cal. Apr. 1, 2011) *supplemented*, No. 06-cv-05778, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (citing *Stanton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009)).  The criteria courts may consider in determining whether to approve service awards include:

> 1) the risk to the class representative in commencing suit, both financially and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  In analyzing these criteria, the Court must conduct an individualized analysis in order to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Alberto*, 252 F.R.D. at 669.

Here, the proposed service awards are justified by the benefits that Plaintiffs Ciamillo and Denham brought to the Settlement Class Members.  They took the significant risk of coming forward to represent the interests of their fellow employees.  *See* Carson Decl. ¶ 17.  They have worked with Class Counsel, providing background information about their employment, about Defendant's policies and practices, and about the allegations in this lawsuit.  *Id*.  They have risked their reputations in the community and in their field of employment in order to participate

in this case on behalf of the Class. They are also providing a general release of most claims to Defendant that is significantly broader than the release other Settlement Class Members will provide. *Id.* ¶ 18. Plaintiffs Ciamillo and Denham seek a modest service award of $10,000 each, for a total service award payment of $20,000 (approximately 0.40% of the total Gross Settlement Amount) for their relentless dedication in prosecuting this matter as well as providing Defendant with a broader general release.

District courts in this Circuit and around the county have routinely approved similar service awards. *See In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d at 463 (approving incentive award of $5,000 to two plaintiff representatives in $1.75 million settlement, comprising 0.56% of the total settlement amount); *Sandoval v. Tharaldson Empl. Mgmt., Inc.,* No. 08-cv-482, 2010 WL 2486346, at *10 (awarding $7,500 incentive payment to named plaintiff, comprising 1% of gross settlement amount); *Hopson,* 2009 WL 928133, at *10 (approving $5,000 incentive award to one named plaintiff, comprising 1.25% of the settlement amount); *see also Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745, at *22-24 (D.N.J. Apr. 8, 2011) (approving service payments of $10,000 to each of eight named plaintiffs in wage and hour case, and citing 2006 empirical study that found average award per class representative to be $16,000); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224, at *12 (E.D. Pa. Jul. 16, 2009) (approving $20,000 enhancement awards for each of three named plaintiffs in wage and hour settlement).

For these reasons, the service award payments of $10,000 each to Named Plaintiffs Ciamillo and Denham should be preliminarily approved.

### 4. The Settlement Amount Falls Well Within The Range Of Possible Approval

The Settlement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009); *see also In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080. Here, the settlement offers a substantial benefit on the Settlement Class Members, while proceeding with litigation would impose significant risk.

Class Counsel conducted a thorough investigation into the facts of this class and collective action and diligently pursued an investigation of Settlement Class Members' claims against Defendant. *See* Carson Decl. ¶ 10. Class Counsel interviewed many witnesses, obtained and reviewed payroll records and other policy documents produced by Defendant, and conducted an extensive analysis of the potential damages and liabilities in this case. *Id*. For its part, Defendant vigorously contests liability in this action, is represented by talented and well-resourced counsel (no less than three defense law firms), and is prepared to vigorously defend against these claims if the action is not settled.

If the litigation proceeds, Plaintiffs would face a very real risk of defeat. There also exists the inherent risk that legal developments could seriously diminish the value of Plaintiffs' claims. Moreover, even if Plaintiffs could prove all alleged violations, there still would be substantial risk the proposed Class would not be certified by the Court, or that the Class would later be decertifed. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time.").

The Settlement provides a substantial, immediate recovery, which is favored by courts in the Ninth Circuit. *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which present serious problems of management and expense.").

Every Eligible Class Member will receive a minimum payment of $250, and the average recovery is estimated to be $8,957.74. *See* Carson Decl. ¶ 16. As such, the Settlement is fair, reasonable, and adequate, is in the best interest of the Settlement Class Members in light of all known facts and circumstances, and is in line with similar settlements in this Circuit. *See e.g.*, *Ontiveros v. Zamora,* No. 2:08-cv-567, 2014 WL 3057506, at *14 (E.D. Cal. July 7, 2014) (approving wage and hour settlement that provided an average recovery of $6,000); *Barbosa v. Cargill Meat Solutions Corp.,* 297 F.R.D. 431, 440 (E.D. Cal. 2013) (approving wage-and-hour settlement providing for an average recovery of $601.91); *Vasquez,* 670 F. Supp. 2d at 1125 (approving wage-and-hour settlement providing for an average recovery of $1,000).

Accordingly, this Court should find that the Settlement falls well within the range of possible approval and grant preliminary approval of the Settlement Agreement.

## C.   Certification of the State Law Class Is Appropriate

Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing FED. R. CIV. P. 23(c)(1)). Conditional approval of the class is appropriate where a plaintiff demonstrates (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of Rule 23(b) also is met. Rule 23(b)(3)

permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). These dual requirements are commonly referred to as "predominance" and "superiority," respectively. *Hanlon*, 150 F.3d at 1022-23.

Plaintiffs Ciamillo and Denham move for preliminary certification of the State Law Class under Rule 23(b)(3), and request that the Court preliminarily find that all of the requirements for class certifications are satisfied for settlement purposes only. Pursuant to the terms of the Settlement Agreement, Defendant has stipulated that, for settlement purposes only, the requisites for establishing class certification pursuant to Rule 23(a) and (b)(3) with respect to the State Law Class have been and are met. *See* Ex. 1 at ¶ 9.

### 1. The State Law Class Is Sufficiently Numerous

To meet the numerosity requirement of Rule 23(a)(1), "the class size only need be large enough that it makes joinder impracticable." *Fry*, 198 F.R.D. at 467. The State Law Class here easily meets the numerosity requirement based upon Defendant's payroll records.

### 2. The State Law Class Seeks Resolution of Common Questions

The commonality requirement of Rule 23(a)(2) is satisfied if the named plaintiff shares at least one question of fact or law with the grievances of the prospective class. *See Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.") Here, Plaintiffs Ciamillo and Denham and the Settlement Class' claims arise from Defendant's common pay policy. The alleged common issues include, for example: (1) whether Class Members were entitled to overtime compensation for their hours worked; (2) whether Class Members were similarly denied compensation for all hours worked; and (3) whether Defendant's

policy of paying a salary plus day rate to Class Members violated applicable federal and state laws. These sample common questions of law and fact, which Plaintiffs Ciamillo and Denham contend apply uniformly to all members of the State Law Class, are sufficient to satisfy the commonality requirement.

### 3.     The Claims Of The Named Plaintiffs Are Typical Of The State Law Class

The typicality requirement of Rule 23(a)(3) is satisfied for purposes of preliminarily approving the settlement, because Plaintiffs' Ciamillo and Denham claims are reasonably coextensive with those of absent Class Members, and because Plaintiffs Ciamillo and Denham possess the same interest and suffered the same injury as the absent Class Members. *See Fry*, 198 F.R.D. at 468; *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982). Plaintiffs' Ciamillo and Denham claims for unpaid overtime compensation during weeks when they worked as a Field Supervisor are typical of the claims of the State Law Class.

### 4.     Class Counsel And Plaintiffs Ciamillo and Denham Meet The Adequacy Requirements

To meet the adequacy of representation requirement of Rule 23(a)(4), a named plaintiff must show: 1) that the potential Named Plaintiff has the ability and the incentive to represent the claims of the  class vigorously; 2) that he or she has obtained adequate counsel; and 3) that there is no conflict between the individual's claims and those asserted on behalf of the class. *Fry*, 198 F.R.D. at 469.

The adequacy of representation requirement is met here because Plaintiffs Ciamillo and Denham have the same interests as the State Law Class Members. There is no conflict between Plaintiffs Ciamillo and Denham and the Class in this case, and Plaintiff Ciamillo's and Denham's claims are in line with the claims of the Class. Plaintiffs Ciamillo and Denham have and will continue to aggressively and competently assert the interests of the Class, and have

retained counsel who are skilled and experienced in wage and hour class action litigation.  *See* Carson Decl. ¶¶ 2-4.

5.      **The State Law Class Satisfies The Predominance And Superiority Requirements of Rule 23(b)(3)**

Under Rule 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

For the reasons discussed above, the State Law Class satisfies the predominance requirement.  In addition, allowing the Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court.  It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis.  Moreover, this Court has previously explained that "a state law claim is not preempted by the FLSA as long as that claim furthers the FLSA's purpose of protecting employees."  *McCoy v. N. Slope Borough*, No. 3:13-CV-00064, 2013 WL 4510780, at *21 (D. Alaska Aug. 26, 2013) (Gleason, J.).

Accordingly, Plaintiffs Ciamillo and Denham respectfully request that the Court provisionally certify the State Law Class for settlement purposes only.

D.      **The Settlement Class Should Be Conditionally Certified Pursuant To 29 U.S.C. § 216(b)**

This case is also appropriate for collective certification under Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  Under the FLSA, a collective action may be maintained by an employee on behalf of others who are "similarly situated."  29 U.S.C. § 216(b).  Courts in the Ninth Circuit typically follow a two-phase approach for determining whether an FLSA action meets the

"similarly situated" standard. *See, e.g.*, *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1340 (N.D. Cal. 2014) ("Certification of a collective action under the FLSA typically proceeds in two-stages."); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) ("The court proceeds under the two-tiered analysis, given that the majority of courts have adopted it."). At the initial stage, "plaintiffs can satisfy their burden to show that they are 'similarly situated' by making substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Nen Thio*, 13 F. Supp. 3d at 1340 (quoting *Harris v. Vector Mktg. Corp.,* 716 F. Supp. 2d 835, 837 (N.D. Cal. 2010)*; Thiessen v. Gen. Elec. Cap. Corp.,* 267 F.3d 1095, 1102 (10th Cir. 2001)). "The requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure. All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Id.* (internal quotation omitted).

Plaintiffs and the Settlement Class are similarly situated to satisfy the requirement for conditional certification of a collective action under section 16(b) of the FLSA, because Plaintiffs allege that Defendant had a common practice of failing to pay all legally required overtime compensation to Field Supervisors. Accordingly, conditional certification of a Settlement Class under the FLSA is appropriate.

### E.     The Proposed Notice Provides Adequate Notice To The Settlement Class And Satisfies Due Process

The United States Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

*Ciamillo, et al. v. Baker Hughes Incorporated*, No. 3:14-cv-00081-RRB (D. Alaska)

of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, the proposed Notice and manner of distribution negotiated and agreed upon by the Parties is "the best notice practicable," as required under Rule 23(c)(2)(B). All members of the Settlement Class have been identified in a class list prepared by Defendant, and the Notice will be mailed directly to the last known address of each member of the Settlement Class (and those addresses that the Settlement Administrator is able to find using reasonable investigatory methods). The proposed Notice, which is attached to the Settlement Agreement as Exhibit A, is clear and straightforward, and provides information on the meaning and nature of the terms and provisions of the Settlement Agreement, the monetary awards that the Settlement will provide to members of the Settlement Class, the procedures and deadlines for making a claim for a settlement award, opting out of the Settlement or submitting objections. *See* Ex. 1 at Ex. A.

Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. CONTE & NEWBERG at §§ 8.21 and 8.39; MANUAL FOR COMPLEX LITIGATION at § 21.311 and 21.312.

### F.     The Proposed Implementation Schedule

The Settlement Agreement contains a proposed schedule for notice and final approval of the Settlement Agreement. The proposed schedule, which Plaintiff respectfully requests that this Court approve, is as follows:

| | |
|---|---|
| Defendant to send CAFA Notice | Within ten (10) business days after submission of the Settlement Agreement to the Court |
| The Parties to provide Class Member information ("Class List") to the Settlement Administrator | Within ten (10) business days after preliminary approval |
| Mailing of Class Notices and Claim Forms | Within ten (10) business days after receiving Class List |
| Plaintiff's Motion for Approval of Attorneys' Fees and Costs | Thirty (30) days after the mailing of Notice and Claim Forms |
| Deadline to postmark Claim Form, objection or requests for exclusion from Settlement ("Notice Deadline") | Sixty (60) days after the mailing of the Notice and Claim Forms |
| Settlement Administrator provides Interim Report to Class Counsel and Defendant | Within five (5) business days after the Notice Deadline |
| Plaintiff's Motion for Final Approval | Ten (10) business days after Notice Deadline |
| Final Approval Hearing | At the Court's convenience, but no earlier than 120 days after preliminary approval |
| Effective Date | The first business day after the Court's final approval of the Settlement is finally affirmed on appeal and/or is no longer subject to appeal or certiorari, and the time for any petition for reargument, appeal, or review, by certiorari or otherwise, has expired (*i.e.*, thirty days from Final Approval). |
| Defendant wires the Gross Settlement Amount to the Settlement Administrator | Within five (5) business days after Effective Date |
| Defendant executes Election Statement | Within five (5) business days after Defendant wires the Gross Settlement Amount to the Settlement Administrator and receives an election statement from the Settlement Administrator |
| Settlement Administrator provides Class Counsel and Defendant with all Claim Forms, final report and Settlement Awards to be Paid to all Eligible Class Members | At least ten (10) business days before Settlement Awards are mailed |
| Settlement Administrator pays approved Attorneys' Fees and Costs | Within seven (7) business days after the Effective Date |
| Settlement Administrator mails Service Awards to the Named Plaintiffs | Within seven (7) business days after the Effective Date |
| Settlement Administrator Pays Net Settlement Fund to the Eligible Class Members | Within thirty (30) days after the Effective Date or as soon as reasonably practicable |
| Checks remain valid | 180 days after issuance of checks to Eligible Class Members |

*Ciamillo, et al. v. Baker Hughes Incorporated*, No. 3:14-cv-00081-RRB (D. Alaska)

## V.    <u>CONCLUSION</u>

Based upon the foregoing reasons, Plaintiffs Ciamillo and Denham respectfully request that the Court grant this Unopposed Motion for Preliminary Approval of the Settlement Agreement, and sign the accompanying proposed preliminary approval order.

Dated: February 13, 2015                                    Respectfully submitted,


                                              <u>s/ Shanon J. Carson</u>
Shanon J. Carson*
Sarah R. Schalman-Bergen*
Alexandra L. Koropey*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
akoropey@bm.net
*Admitted *pro hac vice*.

David A. Hughes (*pro hac vice*)
HARDIN & HUGHES, LLP
2121 14th Street
Tuscaloosa, AL 35401
Telephone: (205) 344-6690
dhughes@hardinhughes.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through the Court's ECF system this 13th day of February, 2015.


s/ Shanon J. Carson_____
Shanon J. Carson